Good morning Mr. Miller when you're ready. If it pleases the court I'm Marvin Miller on behalf of Mr. Hasan who's the appellant in this case. The case arose in the Eastern District of Virginia out of an investigation and operation by the ATF that began in September 2008 and ended in April 2011 during which they cigarettes and took in nine million unaccounted for dollars. There was not nine million dollars in forfeitures. The money wasn't treated as evidence. It wasn't logged in as evidence and what happened to it except portions of it that were forfeited is not known. My client was involved in about less than one-tenth of the total cigarettes during this operation. Basically he bought in 2009, had some kind of involvement in February of 10 and then was arrested in 11 before another transaction took place. The defense went to trial on a stipulated case because the issue that we were addressing was whether or not the ATF actions were lawful. Under 18 USC 2341 2d they have an exemption that it's against the law to possess, sell, distribute and so on under 2342. Their exemption is like the DEA exemption that allows them and the CFRs to possess contraband and drugs which they seize or when they do a buy bust. Secret Service can possess under another CFR counterfeit money. The FBI can make controlled deliveries of pornography. Normally the way those cases happen is that the individual thinks they're buying something or actually the standard buy bust they think they're selling something to another dealer and they're actually selling it to a federal agent. As soon as the sale goes down they get arrested. Mr. Miller. Yes sir. Is it your position and does it make a difference that the cigarettes in the hands of the ATF are contraband but accepted by the statute or does the definition of contraband in the statute simply exclude the cigarettes so that they are not contraband in the hands of the ATF? I think that it excludes them so that when the ATF has them they have an exemption from the general prohibition that is consistent with all the other law enforcement agencies in dealing with contraband. So it's not contraband while they have it? I'm sorry. It's not contraband while the ATF has possession? I think it is contraband while they have it but I understand the statute to say that they have an exemption that makes it lawful them to possess it and they're not possessing contraband when they're doing it in the line of duty. The same way the DEA agent who just bought a kilo of cocaine from the unsuspecting guy and arrest him, that's still cocaine. It's still illegal but he can have it and it's not against the law for him to have it. Or the Secret Service agents who bought the counterfeit money in Milam, they could buy it, it's illegal to have it but it wasn't illegal for them to have it. But isn't 2341 2D a definitional section? It is a definitional section. Then why wouldn't a definitional section of a statute not apply to 2342A? I think it would and I would, my position is as I indicated that the section creates an exemption. If the exemption is under the postulate that you offer a definition that makes it non-contraband, that still doesn't allow the ATF to sell it. I'm not sure I understand the distinction that you're trying to make. You've got a definitional section that says that the unlicensed and then you have 2342A allowing officials, law enforcement officers, to conduct undercover operations. Why would not the definitional exemption, which makes the unlicensed cigarettes not contraband in their possession, not extend to their undercover activities? They can possess, as all agents can, exempt them from criminal penalties when they take possession of it, or in a seizure, or when they buy it from unsuspecting unlicensed cigarette sellers, which is the standard operation. That's one thing. None of that however gives them the authority to sell and distribute and let millions of cigarettes walk up and down the East Coast. Doesn't section 2342 make it unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes? It does. And we've established that they're not contraband. If they're contraband after they're sold, what they're doing is they are selling what becomes contraband and allowing it to walk, because as you indicated, distribution is illegal and there's no exemption for that. So if they're distributed and on that magic crossing of the line they become contraband, then the ATF is letting contraband walk and they have sold it and they have let people who aren't licensed buy it and they let it be distributed up and down the East Coast and that's the gravamen of the issue. That would be bad public policy for the ATF to do that. Probably bad public policy for the Justice Department to let the guns walk in Fast and Furious, but how does that help your client? In Fast and Furious, they were watching sales. They weren't selling... Tell us how your argument about letting this contraband cigarette walks, how does that help your client in his criminal case? Because that is distribution. In Russell, they provided to the drug makers a lawful chemical, which wasn't an illegal thing to do. In the Green case, where they ran the still for what, two years in California, they provided sugar, a legal substance. The point of it is, though, that in Russell, like in Milam in this case, in this circuit, which is the counterfeiting case, where the defendant who didn't appeal was... the court went out of its way to say that that individual had a culpable claim of a due process violation. How it helps my client is this. The lower court ruled in footnote 9 on page 163 of the appendix, which is footnote 9 in his opinion, that they don't need authorization. That if they do something illegal in the line of duty, it's okay. No, what they're doing is expressly sanctioned by the language of the statute, which allows them to sell and distribute. So for purposes of this provision, the unlicensed cigarettes are the functional equivalent of sugar. They are legal in the hands of the law enforcement officers. But when they... It's only when... it's only the individual who is not a law enforcement officer who takes them, that the illegality occurs under the statute. Either way, it's unlawful for them to And if you're... They're not distributing contraband because it's not contraband. Once they've distributed it, it is contraband. And... Yes, it's contraband for your client. And what they're doing is they are the distributors that make it contraband because they let it go. There are no cases in the country that you will find in any circuit or in any district court other than this one that I know of, and I could be wrong because I'm wrong lots of times, as you all well know. But the point of it is that there's no case that has allowed them to distribute eight million units of contraband that become contraband when somebody takes it. Just like in the Green case, when they gave him the sugar, the whiskey was illegal, the circuit said you can't do that. In the Twig case, the third... I'm sorry, Your Honor. When does the illegality occur? When they let it go and walk and make no effort to track it and allow it to float free in the community. What they've done... How can they sell or distribute it without letting it go? The way they do it in all kinds of drug cases, gun cases, machine gun cases, silencer cases, when the guy takes control over it, cops come out of the woodwork and they get busted. That's what they did in the Godwin case with a pornography that was delivered. That's the whole purpose that you have sanctioned anticipatory warrants. What did you say when you did that? You said, we know they're going to get it, we don't want the public to have it, once we give it to them and they take it, we want to be able to get in and snatch it up. And that's what the anticipatory warrant is all about. And that's why in the reverse sting, in every reverse sting case, the person thinks, aha, I'm getting the goods, I've got a great price, they take it, they get busted, and the stuff doesn't go anywhere. And that's where the wrong is in this case. Not the least of which, to me at least, is the $9 million unaccounted for dollars. We don't know where it went. You know the case down in Hampton just recently, where like in this case, they were married with local police, they were working with local police, some local policeman was doing who knows what with money, so the ATF backed out. Now that was since our opening brief and we put it in our reply brief. But who knows what happened here? You know that the report said the money was given to a Fairfax County police sergeant. This was around the time of Fast and Furious. We don't know what they're doing, but even if they're allowed to possess and it's not contraband, there is no authorization for them to be wholesale distributors and let it go around in the country as federal agents. There is the express language of the statute. I'm sorry? The express language of the statute does not authorize them to sell and distribute because once they sell and distribute it becomes illegal and upon that act, if it becomes illegal at that point, then they're engaging and allowing crime to take place and they're fostering it. This isn't the undercover guy who is infiltrating a drug ring but he's not allowed, if it's an extortion ring, to beat people up. If it's a pornography ring, he's not allowed to film and distribute pornography. He can be there and be the eyes and ears of the government as an agent or as a cooperating individual. But as you all know, when you sign a cooperation agreement with a federal agency to be a cooperating individual, a citizen, you agree not to violate the law. Federal agents aren't allowed to become distributors or aiding and abetting these distributors in this case, even though my guy was a little as fry in the bunch, but less than one-tenth, they are still aiding and abetting distribution. They didn't follow it. They didn't care where it went. They didn't put beepers in it. There's no GPS tracking. They didn't have any idea what was going on with this stuff and there's been no case like that and that's where the problem is. And when the court said in the lower court's decision that what they don't even need authorization because if they do it in the line of duty it's okay, that's where the danger is. And that's what this court recognized in the Milam counterfeit case for the printer. That's what this Third Circuit recognized in Twig, the Ninth in Green, the Supreme Court, and Russell. Hampton doesn't count because that was an issue. I'm sorry? Before your time expires, do you want to address the forfeiture part of your argument? Yes. If their distribution, as you said, Judge, is legal, then what's legal commodity being distributed and it's being handled by my client in an illegal way, then under 981, it's the profit is forfeitable. You can't have it both ways. If he's handling a legal product in an illegal way, then when he's doing that, his forfeiture is computed by the profit, not by proceeds of totally legal all up and down the line. I hope I answered your question, Judge. We'll see. Yes, I will. Thank you. Mr. Cook. May it please the court, Richard Cook on behalf of the United States. Unless the court would like me to start with the due process issue, I thought I'd start with the forfeiture question where the law is, I think, somewhat less developed than on the due process question. And the key issue here is there are two provisions in 981A2. There's subsection A that applies to illegal goods, and for that subsection, in calculating the forfeiture amount, you are not limited to the net gain or profit realized for the offense. Subsection B of 982A2 applies to lawful goods that are sold or Mr. Hassan had the cigarettes. Were they illegal goods under subsection A, or were they lawful goods under subsection B? They were illegal goods, and I understand that there is some surface appeal to the defendant's point of low... I'm sorry, I just didn't hear what you... there's some what? There's some... it is A applies, and I think there is some surface appeal to the notion that, well, look, cigarettes generally are legal products, and so why isn't this governed by subsection B, which is the lawful goods that are sold or provided in a legal manner? And the answer to that is fairly straightforward, I think, and it follows from the language of 18 U.S.C. 3242A, which is the statute that prohibited the court was just discussing with defense counsel, when defendant receives the cigarettes, he doesn't have this exemption that law enforcement does. So the cigarettes are contraband under the definition in 2342... I'm sorry, 2341-2, subsection 2, for the defendant, and 2342A has a provision that covers receive... a defendant who receives, possesses, sells, distributes, or purchases contraband cigarettes. This defendant... So I assume that your premise is that in the hands of the ATF, the cigarettes are not contraband under the statute, but as soon as Mr. Hassan purchased them, they were converted to contraband. Exactly. Well, that can't be. The statute says receive contraband, which means there must be contraband before they... it didn't say possess, it said receive contraband. It's not contraband until they possess it. It covers, I think, every part of... every part of this defendant's contact with these cigarettes, because the statutory language covers specifically receive, possess, sell, distribute, or purchase. And because the defendant doesn't have this express exemption from the definition of he's not law enforcement, and they are a quantity of cigarettes that meets the standard for being... the 10,000 cigarettes that meets the standard for being contraband. So as soon as he grabs on to them, they are... they're... he's receiving contraband cigarettes, and he's possessing them, and then we have a finding from the district judge that they're sold up in New York. Your arguments actually, with respect to both components, the forfeiture component and the due process component, rise and fall together, do they not? Because it devolves to the definition of the term contraband, which is inextricably linked to the possessor. The same... it's a little bit unusual in that the same substance is contraband in the hands of one person and not contraband in the hands of the other. And that definition flows into the forfeiture, or the interpretation of the forfeiture provision. I agree with that generally. I mean, I think if there isn't a specific statutory authorization on the due process side, that still doesn't automatically equal a due process violation. Right, there's another element, and I was hoping you would address, perhaps to a greater extent than in his argument, the specific due process argument, the egregiousness argument. Well, there isn't an egregiousness established here because what the ATF were doing was authorized by the statute, and also, or rather, I should say, as to the definition, it's not prohibited. What they're doing is not an illegal act. And then we have, as the district court noted, specific statutory authorization for police, for the ATF to conduct undercover operations, including operating businesses. And I think it's reasonable to conclude from that, that undercover operations in this context would typically be dealing with people who are conducting criminal enterprises. And so, running a business dealing with an undercover operation is going to involve illegal conduct. Also, I think in this context, what we're dealing with is a crime that is at its core economic in nature, and the government is trying to obtain and prevent a tax loss, trying to recoup money that's being lost to the state. And you can see that from just looking at the PSR, there were five co-defendants listed, and that's a joint appendix 269 to 70. And there were restitution judgments entered against four of those defendants, ranging from about $7 million to $9 million for each of the states, or for the states where they were depriving them of tax revenue. And the money being seized at the very end of the operation when they arrest everyone, and the defendants show up with cash to buy cigarettes, and those cigarette sales aren't completed, and they have the cash seized, that's being applied to the states. So, this is not an operation where it's just like a big money-making venture for the ATF. I mean, the defendant says, oh, they're making profit. The district court ultimately didn't make a finding one way or the other about whether the ATF was making a profit. But from a grand, the big picture stepping back, what the ATF is trying to do is make an investment in a enforcement program that, at the end of the day, on balance, is going to prevent greater loss to the state in tax revenue. Cigarette trafficking is, unfortunately, a very profitable enterprise, and... Mr. Cook, if I could sort of go back to the due process question. I understand the due process allegation to derive from the Supreme Court's suggestion that conduct of law enforcement agents can be so outrageous as to bar the government from seeking, from invoking judicial processes to obtain a conviction. And in the seminal case that the defendant, I believe, referred to, there was a challenge to the actions of an undercover agent who supplied the defendant with a key ingredient for the making of a veteran, as I'm sure you Hassan is making, and I was hoping you would respond directly to that. Sure. Why, in your view, that level of outrageousness has not been reached here on these facts? Right. Well, in the Supreme Court's opinion in Russell, the agents provided an ingredient for making meth, and the Supreme Court said that that didn't rise to the level of a due process violation. And then in the Hampton case that came after Russell, the Supreme Court said, in a fractured opinion, that involved, there was actually a fact dispute about whether an informant or an agent, you know, a person who wasn't a law enforcement officer but working on behalf of the government, whether that person had actually supplied heroin. But the case, as it was decided in Supreme Court, there was an assumption that, in fact, what had happened is that that person working on behalf of the government had provided heroin that was then sold. And the Supreme Court held that that also was not a due process violation, and there was difference between Justice Rehnquist's opinion for three justices and Justice Powell's opinion, concurring with the concurring opinion by Justice Powell, generally treated as the controlling opinion in that case. And Justice Powell concluded that there was still room for a due process violation, and I think that this court's cases since then have continued to say there is, you know, a possibility of being able to bring a claim under the due process clause, saying that the government's conduct was so outrageous. But the courts have consistently said, both the Supreme Court and this court and other courts, that simply supplying contraband doesn't rise to the level of a due process violation. There are cases involving, you know, agents who have gotten involved in improper relationships with defendants and that sort of thing that have come closer to due process violations, but conducting undercover sting operations with contraband has never, in this court of the Supreme Court, been deemed a due process violation. I don't know, is that responsive to your concern? Yes, thank you. Mr. Cook, since the authorization to sell cigarettes is not explicitly given to the government here, and I think you would rely upon the fact that they can conduct undercover operations would be broad enough to include what we have here is they're actually selling it, correct? Right. Well, if you if you base it on that, this hypothetical, if they decide in this operation that it's very likely that people involved in selling and buying these cigarettes would know agents that they would have to use someone who's otherwise sells these cigarettes as the go-between, could they give it to a third party and let that third party sell? Would it be contraband then if the third party is selling it to the defendant? I think that would be a closer question. There's in a range of contexts the issue of when somebody is a government agent, like for example under the Fifth or Sixth Amendment and interrogation context or in the context of deciding whether it's a violation of a constitutional right, there's often a very fact-intensive inquiry about whether a particular person has become a government agent at that point. And so I think that similarly in this context, whether somebody was truly essentially deputized by the government for purposes of the government's exercise of its responsibility, would depend on the circumstances. Or whether that person is somebody who is essentially a co-conspirator who's going to have to depend on the government to, you know, agree not to prosecute them basically for having engaged in criminal conduct. And it's often the case that you'll have somebody who's participating in a scheme and they're arrested perhaps on other you know, tell the government what they've done in this other scheme as cooperation in an effort to obtain leniency in their prior conduct. Of course that would not be something that would be deemed, you know, authorized by the government. But if they were then, you know, given a wire and sent in to complete a deal, then I think that they could very well be deemed a government agent in that situation. In that hypothetical, it would raise questions with respect to the liability of the intermediary. Would it raise questions with respect to the liability of the ultimate purchaser? No, I don't think so because they don't have any authorization here at all. I mean, I think that one simple analogy, too, that makes it seem a little less strange that you have this dividing line of where as soon as the cigarettes leave the ATF's hands and then enter the hands of the defendants that it's illegal. You know, you could have a warehouse owned by Philip Morris with cigarettes in it. They've got permission, of course, those aren't contraband cigarettes they're manufacturing. They've got them stored there. Somebody breaks in and steals them as soon as they grab them. These now have become contraband cigarettes. They were in a moment before and as soon as the defendant lays hands on them, now they're contraband. And so it's, you know, this is not an unusual, I think. So are you suggesting that all stolen goods are contraband? Well, I mean, here we've got a definition of contraband cigarettes that's dealing specifically with cigarettes. And so I wouldn't say that, you know, stereos or televisions or that kind of thing is necessarily going to straightforwardly work through the same, you know, analytical structure we have here for cigarettes. Cigarettes, you know, they have a very specialized scheme here. Well, if the court has no further questions, we'd ask that you affirm. Thank you, Mr. Cook. Mr. Middleton? First of all, this was not a reverse thing and they had no intention and have no intention of doing anything for taxes for either Virginia or New York. We had no restitution order. Restitution order wouldn't have fit under the statute. My client couldn't afford it and the judge didn't order it. The other people's restitution is never going to be paid. The government's never going to pay the tax authorities involved and had no contact with them whatsoever and made no effort to let them know what was going on. Insofar as 2341 D is concerned, I think if we read the second part of the last part of that sentence, which says that possession, which is exempt, if they're having possession of them in connection with the performance of their duty, so they are not contraband if they're being possessed for that purpose. When they change in their mind the attitude and the intent and the goal from possession and the performance of their duty to distribution, even before they pick them up and sell them, at that point they become contraband because there's no exemption for distribution whatsoever. They may only possess. And so once they determine that they're going to distribute, then that becomes a criminal act. It's either a direct criminal act, a conspiracy, or aiding and abetting other people involved in crime. So let's assume that's correct. How does that help your client? Unless you can convince us that the very act is egregious. And you, when you had an opportunity to make that argument to us, it seemed to me you were going down the path of money and tax and not the fact that they were letting a product go into the public that has some warnings on them of a certain nature. Let me address that, Your Honor. This is an egregious case because what they did, cigarettes kill 450,000 people a year. More than heroin, crack, PCP, suicide, murder, guns, cars, everything all combined. And they let eight million of them loose on the country with no effort to track where they went or what they did. And they did it for two years. Their case could have been... Truly, truly terrible. It really is. Where is it illegal under the statute? It's really terrible because what they did is they facilitated criminal conduct. In Twig, when they gave them a farmhouse, that wasn't a crime. When they gave them glassware, that wasn't a crime. When they gave them chemicals, that wasn't a crime. But in Twig, the Third Circuit said, look, what they're doing is fostering criminal conduct and they can't go that far. The same thing happened in Greene. The same thing was opined by this court for the printer in the Milam counterfeiting case. The guys like Milam and Piriano who were going to buy the counterfeit, that's different than the printer where the government was fostering the criminal conduct. There is a limit. And this case shows that limit. If this isn't a sample, this is a long-term operation to distribute millions with no concern about where they went or what happened. Did they go to New York or Connecticut? Tell me where the line is. Because in your argument, you seem particularly concerned about the numbers of cigarettes that are distributed, which apparently would have been distributed anyway. They would have been sold as a part of the conspiracy. But the difficulty, I think, under the statute is that the nature of the product has contraband. The illegality here is in due process. And due process is a fundamental core where the government cannot foster criminal conduct just to foster criminal conduct. And that's what they did here. Well, we normally do that through entrapment type protections, but you don't make that claim here, do you? No, this is not entrapment. That is why in there are three cases, third, ninth, and fourth that I cite, that recognize in non-entrapment cases, there is a due process component which courts can and should apply. And this court is one of those courts that recognized it and said it. And they said it in a case where the defendant to whom it applied was not even in the appeal because he did not appeal. And the Supreme Court said so in Russell. Hampton isn't, I don't think, applicable because if you read it, the defense issue was entrapment and it wasn't entrapment. And that's not what we're raising here. We're saying that under due process of law, if you go back to Olmstead, when the government engages in illegal conduct and the government sets the example of criminal conduct is okay, then and what you're dealing with here were Fairfax County Police and ATF. And so what you're dealing is they're distributing... So in your example, if there had been a mechanism for the ATF to scarf up the cigarettes after Mr. Hassan resold them, that would terminate your due process argument? Perhaps. If they had bothered to follow them, if they had done as they do it in the old chemical cases for PCP and metal... But it wouldn't have changed anything that your client did. It doesn't change what my client did. The due process argument isn't that the defendant is blameless. The due process argument is that the government has crossed the line. If this doesn't cross the line, and you read footnote 9 written by the judge as to what can be done in these kinds of cases, even if they do not have authority and their conduct would otherwise be unlawful if committed by ordinary citizens, there is no need for them to have specific authority as is present here in order for those officers to engage in acts during the course of their official duties that would otherwise amount to criminal conduct. That's the premise that the government is urging. That's what they want you to endorse. This was a criminal conspiracy created and operated by the government. They didn't want to go up the chain to the money. They didn't want to go down the chain to the sellers. They didn't care where it went or who got it. Cigarettes are controlled by the FDA. Cigarettes... 16 year old kid... I can't give a 16 year old kid a carton of rifle and he and I can go out squirrel hunting with it. That's legal. So they're regulated. They're not just totally carte blanche. If this principle is true, it's like the nose of the camel under the flap of the tent. In Colorado, let them sell marijuana because it's legal in Colorado and Washington State. The whole concept here is that they went over the line in the size of their operation, in the scope of it, in the way they handled it, and they fostered a distribution conspiracy that they created, that they fostered, that they put out. They put out the cards. They put out the advertising and yonkers. They took people in. They moved it down to Virginia and they advertised and they said they wanted to do this business and that's what they did. That's not lawful. That's the government setting the example of criminality. And parsing the statute from where I sit and way I read it is possession while in possession, okay for even if I'm wrong in that, which I don't think I am with all due respect to Judge Duncan. The point of it is that they can't do this kind of conduct. The courts have to say no. This defendant, no guns, no drugs, nothing, just cigarettes. There were five defendants in a two-year operation. They didn't get to the bodegas and the little shops that sold it. They didn't get to the money people either. The forfeiture thing, if it's legal for me to have it and it's legal and I can give it to you and that's not a crime, then when I get it, if I don't get the tax stamp, that's when I commit the crime and I hand it illegally. If I bought it from them at a cheap price and then I go get the tax stamp, let's say Hassan did that, then when he got the tax stamp it became legal. So it's a legal product handle illegally by not getting the tax stamp on it, which he could have done in So we are in a dangerous situation in this case and the precedent that you set is going to be very well considered by law enforcement. How far can they go and what can they do? And there's got to be a limit and in this case they crossed it. It was just huge and long term and no control. Thank you. Thank you very much. We'll come down and greet counsel and proceed to our next.
judges: Roger L. Gregory, Allyson K. Duncan, G. Steven Agee